UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGIL M. LORENZO,<br><br>         Plaintiff,<br>v.<br>LLOYD J. AUSTIN III,<br>Secretary,<br>Department of Defense,<br><br>         Defendant. | Case No.: 19-cv-1128-WQH-BGS<br><br>**ORDER** |

HAYES, Judge:

  The matter before the Court is the Motion for Summary Judgment filed by Defendant Lloyd J. Austin III (ECF No. 31).[1]

**I. BACKGROUND**

  On June 17, 2019, Plaintiff initiated this action by filing a Complaint against Patrick Shanahan, the Acting Secretary of the Department of Defense.[2] (ECF No. 1). In the

---

[1] On January 22, 2021, Lloyd J. Austin III became Secretary of Defense. Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Austin is automatically substituted as Defendant.

[2] Prior to filing the Complaint, Plaintiff filed an administrative complaint and received an adverse final decision from the Equal Employment Opportunity Commission (EEOC). Plaintiff filed the Complaint within the 90-day window after Plaintiff's receipt of the EEOC decision, as required by 42 U.S.C. § 2000e-16(c).

1

Complaint, Plaintiff alleges three causes of action as a result of his termination: (1) discrimination on the basis of race and national origin under Title VII of the Civil Rights Act; (2) discrimination on the basis of age under the Age Discrimination in Employment Act; and (3) discrimination on the basis of disability under the Rehabilitation Act.[3]

The parties engaged in fact discovery. On July 26, 2021, Defendant filed a Motion for Summary Judgment, seeking summary judgment on all claims in the Complaint. (ECF No. 31). On August 13, 2021, Plaintiff filed an Opposition to the Motion. On August 20, 2021, Defendant filed a Reply.

## II.     FACTS[4]

In August 2010, Plaintiff Lorenzo was hired as a provisional middle school science teacher at Lester Middle School, a facility operated by the DoDEA. Lester Middle School is an education facility serving Camp Lester Marine Corps Base in Chatan Town, Okinawa, Japan. The school is operated by the DoDEA, which manages pre-kindergarten through 12th grade educational programs for families of United States servicemembers domestically and abroad. Plaintiff was employed by Defendant until December 2010, when he was terminated from his position.

Altorn Grade, Jr., the principal of Lester Middle School, interviewed Plaintiff for the teaching position. At the time of Plaintiff's interview there were "five potential candidates" for the teaching position. (Grade Affidavits, Ex. 4 to Keehn Decl., ECF No. 31-3 at 95). In the interview, Grade and Plaintiff did not discuss that Plaintiff had "any

---

[3] Plaintiff states in his Opposition to Defendant's Motion for Summary Judgment: "Mr. Lorenzo is withdrawing his claim that the termination was based on his age . . . ." (ECF No. 33 at 7). As a result, summary judgment is granted on Plaintiff's second claim.

[4] Defendant filed evidentiary objections. (ECF No. 34). The objections to evidentiary materials not relied upon in this Order are denied as moot. The objections to the portions of evidentiary materials that are cited in this Order are overruled because there is no indication that the evidence relied upon in this Order could not be presented in an admissible form at trial. *See Fonseca v. Sysco Food Servs. Of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) (evidence is "admissible for summary judgment purposes [if it] 'could be presented in an admissible form at trial.'" (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003))).

issues at all with any kind of disability." (Grade Deposition, Ex. 2 to Keehn Decl., ECF No. 31-3 at 57). On August 20, 2010, Grade offered Plaintiff the teaching position. Plaintiff's race is "Southeast Asian, Malay, [and] Filipino" and his national origin is the "Philippines." (Lorenzo Affidavit, Ex. B to Prato Decl., ECF No. 33-2 at 12). At the time of the hiring, Grade was aware of Plaintiff's "skin color and physical features." (Grade Deposition, Ex. 2 to Keehn Decl., ECF No. 31-3 at 56-57).

As a provisional teacher, Plaintiff was subject to DoDEA's performance appraisal requirements. All new Department of Defense Dependents Schools educators are placed at a "provisional" level for an introductory two-year period. (DoDEA EPAS, Ex. 1 to Keehn Decl., ECF No. 31-3 at 11). One of the purposes of the provisional level is to "provide an appraisal system which determines retention and dismissal of educators." (*Id.*). Provisional educators are rated on five critical "professional performance elements," each of which contains specific mandatory standards. (*Id.* at 12). Performance Element Four, "Monitoring and Assessing Student Achievement," is defined as follows:

> The effective educator uses a variety of assessment techniques and procedures to evaluate learning and guide instruction.
> A. Uses a variety of assessment tools and strategies:
>   1) Assures assessment methodology is appropriate to the instructional goal
>   2) Communicates assessment criteria and standards to students
>   3) Provides timely, accurate and constructive feedback to students
>   4) Uses information gained from student assessment to guide teaching
>   5) Assesses learner progress in relation to adopted curriculum standards on a continuous basis
>   6) Communicates student progress to parents
> B. Documents student progress:
>   1) Maintains accurate documentation of student progress in a retrievable record-keeping system
>   2) Documents student progress toward meeting school goals and community strategic plan

(*Id.* at 19 (emphasis omitted)). "An unacceptable rating may be rendered at any time an employee's performance does not meet any critical element." (*Id.* at 13). As part of the

provisional process, educators also must undergo "a minimum of three formal observations per year." (*Id.* at 12).

In September 2010, Grade began receiving complaints from Plaintiff's students and their parents regarding Plaintiff's teaching. Grade forwarded one parent's emailed complaint to Plaintiff and asked him to speak with the parent. The parent had concerns about "[Plaintiff's] accent and [her child] understanding some of the concepts covered." (November 18 Email, Ex. E to Prato Decl., ECF No. 33-2 at 23). Grade began giving Plaintiff "support and specific directions" to improve Plaintiff's teaching performance. (Grade Affidavits, Ex. 4 to Keehn Decl., ECF No. 31-3 at 89).

On October 1, 2010, Grade "sat down with [Plaintiff] and reviewed [Plaintiff's] performance standards, performance elements, and the DoDDS Educator Performance Appraisal System." (*Id.* at 88). Plaintiff "left the meeting with a signed copy of the Performance Standards" and was "reminded" that "three formal observations" were required during the year. (*Id.*). On October 7, 2010, Grade provided Plaintiff with curriculum support from an Instructional Systems Specialist.

On October 12, 2010, Grade sent Plaintiff an email that stated:

> We are beginning the seventh week of school and I am very concerned about your grading practices. Today I reviewed LMS Teachers' GradeSpeed Grade Books.
>
> Currently, you have only five or six assignments listed for your classes.
>
> Some students do not have any grades listed . . . .
>
> You should have at least a grade a week for each student entered into Gradespeed. I would expect to see at least double what you have entered.
>
> I have included a copy of Performance Element 4. For a lot of your students it would be hard for you to prove that you have satisfied any part of this element.
>
> . . . .
>
> Please rectify this situation. On Friday, October 15, 2010, I will again review Gradespeed and let you know of my findings.

4

(October 12 Email, Ex. 7 to Keehn Decl., ECF No. 31-3 at 108). Grade did not recall sending a "direct letter e-mail to any person about their entering grades in Gradespeed, other than [Plaintiff]" that year. (Grade Deposition, Ex. 2 to Keehn Decl., ECF No. 31-3 at 65-66).

On October 19, 2010, Grade presented Plaintiff with a "Letter of Counseling." (Letter of Counseling, Ex. 5 to Keehn Decl., ECF No. 31-3 at 98). The letter informed Plaintiff that he had "failed to satisfactorily perform in Critical Element 4 Monitoring and Assessing Student Achievement." (*Id.* at 98). The letter stated that "[l]ess than a quarter of your students have all six grades entered into GradeSpeed." (*Id.* at 99). The letter stated that a student had complained to Grade that Plaintiff had lost "all her work" and that Plaintiff required the student to "redo all the lost assignments." (*Id.* at 100).

On October 27, 2010, Grade placed Plaintiff on an "In[t]ervention Plan," which identified Plaintiff as deficient on three of the five required Performance Elements—Elements Two, Three, and Four. (Intervention Plan, Ex. 8 to Keehn Decl., ECF No. 31-3 at 110). The DoDEA Educator Performance Appraisal System provides that educators at the professional level may be placed on an "Intervention Plan" prior to termination. (DoDEA EPAS, Ex. 1 to Keehn Decl., ECF No. 31-3 at 15). The purpose of an Intervention Plan is to "provide assistance to educators who are not meeting one or more of the professional performance critical elements." (*Id.*). Educators placed on an Intervention Plan are monitored and afforded "professional growth opportunities" including "peer assistance, mentoring, resource teams, or staff development." (*Id.*). The Educatory Performance Appraisal System does not provide educators at the provisional level with an opportunity to be placed on an Intervention Plan.

On November 18, 2010, Grade "discovered" that Plaintiff, as a provisional teacher, could not be placed on a formal Intervention Plan prior to termination. (Grade Affidavits, Ex. 4 to Keehn Decl., ECF No. 31-3 at 89). Despite Plaintiff's ineligibility, Grade and Plaintiff agreed to "continue this [intervention] process" informally. (*Id.*). Plaintiff agreed to perform a number of tasks, including sending Grade "Weekly Lesson Plan[s]," providing

"pre-observation documentation," "Communicat[ing] To Parents of Failing Students," and improving classroom management. (Intervention Plan, Ex. 8 to Keehn Decl., ECF No. 31-3 at 110*;* Grade Deposition, Ex. 2 to Keehn Decl., ECF No. 31-3 at 68-69).

Between September and November 2010, Grade received at least ten student and parent complaints. "As late as November or December," Plaintiff was still failing to record grades. (Grade Deposition, Ex. 2 to Keehn Decl., ECF No. 31-3 at 75). Plaintiff failed to provide to Grade "pre-observation documentation" required to organize additional classroom observations. (*Id.* at 68-69).

In the first week of December, the parent who had previously expressed concern about Plaintiff's accent "became irate" in a conversation with Plaintiff after Plaintiff "suggested that her son's extended absence . . . has something to do with his getting behind in [Plaintiff's] class." (Lorenzo Affidavit, Ex. B to Prato Decl., ECF No. 33-2 at 15).

On December 13, 2010, Grade issued Plaintiff a notice terminating Plaintiff's employment, effective December 17, 2010. The notice stated that Plaintiff was terminated for "failure to demonstrate acceptable teacher performance in critical element 4: Monitoring and Assessing Student Achievement, of [the] DoDDS teacher performance plan." (Notice of Termination, Ex. 10 to Keehn Decl., ECF No. 31-3 at 122). In a subsequent termination conference, Grade told Plaintiff that he did not "communicate well with parents" and expressed concern that "students were getting behind in science." (Lorenzo Affidavit, Ex. B to Prato Decl., ECF No. 33-2 at 15).

### III.  LEGAL STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The materiality of a fact is determined

by the substantive law governing the claim or defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). The moving party has the initial burden of demonstrating that summary judgment is proper. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 153 (1970). Where the party moving for summary judgment does not bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325; *see also United Steelworkers v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542-43 (9th Cir. 1989) ("[O]n an issue where the plaintiff has the burden of proof, the defendant may move for summary judgment by pointing to the absence of facts to support the plaintiff's claim. The defendant is not required to produce evidence showing the absence of a genuine issue of material fact with respect to an issue where the plaintiff has the burden of proof. Nor does Rule 56(c) require that the moving party support its motion with affidavits or other similar materials negating the nonmoving party's claim.").

If the moving party meets the initial burden, the burden shifts to the opposing party to show that summary judgment is not appropriate. *Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 322, 324. The nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 586; *see also Anderson*, 477 U.S. at 252 ("The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient."). The nonmoving party must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quotations omitted). The nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson*, 477 U.S. at 256.

## IV.  DISCUSSION

Defendant seeks summary judgment on Plaintiff's remaining claims:  (1) discrimination on the basis of race and national origin under Title VII of the Civil Rights

Act; and (2) discrimination on the basis of disability under the Rehabilitation Act. The parties agree that the claims are governed by the burden shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). "Under *McDonnell Douglas*, a plaintiff alleging disparate treatment . . . must first establish a prima facie case of discrimination." *Chuang v. Univ. of California Davis, Bd. of Trs.*, 225 F.3d 1115, 1123 (9th Cir. 2000). "The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. If the employer does so, the plaintiff must show that the articulated reason is pretextual" by either persuading the court that a discriminatory reason was the more likely motivation or by showing that the employer's explanation is unworthy of credence. *Id.* at 1123-24.

**Title VII Claim**

Title VII makes it unlawful for any employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of his employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e–2(a)(1).

Defendant contends that Plaintiff failed to demonstrate membership in a protected class. Defendant contends that Plaintiff was terminated because he was not performing his job satisfactorily. Defendant contends that Plaintiff has insufficient evidence of pretext. Plaintiff contends that he was qualified for the position and that his performance was improving. Plaintiff contends that a parent's complaint about his accent before he was terminated demonstrates that his termination was racially motivated.

"In determining whether a prima facie case has been established, the overriding inquiry is whether the evidence is sufficient to support an inference of discrimination." *Douglas v. Anderson*, 656 F.2d 528, 532 (9th Cir. 1981). A plaintiff must show that he (i) belongs to a protected class; (ii) was performing his job in a satisfactory manner; (iii) was discharged; and (iv) that other employees with similar qualifications were treated more favorably. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998); *Dorn-Kerri v. Sw. Cancer Care*, No. 06-cv-1754-NLS, 2008 WL 11337441, at *5 (S.D. Cal. Oct. 6,

2008). "The requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994).

Plaintiff is "Southeast Asian, Malay, [and] Filipino." (Lorenzo Affidavit, Ex. B to Prato Decl., ECF No. 33-2 at 12). This is sufficient at summary judgment to demonstrate that Plaintiff belongs to a protected class. *See Lyons v. England*, 307 F.3d 1092, 1113 (9th Cir. 2002) ("Here, appellants have satisfied the first prong of *McDonnell Douglas,* by establishing that, as African–Americans, they all belong to a protected class."). Plaintiff was terminated from his position. The first and third elements of Plaintiff's prima facie case are satisfied.

The second element requires that Plaintiff show that he was performing his job satisfactorily. Only objective performance criteria should be considered at this stage of the inquiry. *See Nicholson v. Hyannis Air Serv., Inc.*, 580 F.3d 1116, 1123 (9th Cir. 2009) (holding that subjective criteria should not be considered in the prima facie case for determining whether the plaintiff was qualified to perform a particular employment role). The record shows that in October 2010 Plaintiff was failing to meet the DoDEA performance standards. The record contains no evidence that Plaintiff's performance satisfied all the applicable performance requirements at any time during his employment. The second element of Plaintiff's prima facie case is not satisfied.

The fourth element of the prima facie case requires a showing that Plaintiff was treated differently than other similarly situated employees not in the same protected class. "[I]ndividuals are similarly situated when they have similar jobs and display similar conduct." *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 641 (349 F.3d 634). The record contains no evidence that Defendant treated any other school employee more favorably than Plaintiff. The fourth element of Plaintiff's prima facie case is not satisfied.

Even if the requirements of the prima facie case were met, Defendant provides evidence of a legitimate nondiscriminatory reason for the termination. According to the

termination letter, Plaintiff's termination was the result of his "failure to demonstrate acceptable teacher performance in critical element 4." (Notice of Termination, Ex. 10 to Keehn Decl., ECF No. 31-3 at 122). Defendant has met his burden of production with respect to the second stage of *McDonnell Douglas*.

To prevail, Plaintiff must demonstrate that Defendant's stated reason for the termination is pretextual. "Where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action." *Bradley v. Harcourt, Brace & Co.*, 104 F.3d 267, 270-271 (9th Cir. 1996). Grade hired and fired Plaintiff in the span of less than four months. At the time of hiring, Grade was aware of Plaintiff's "skin color and physical features." (Grade Deposition, Ex. 2 to Keehn Decl., ECF No. 31-3 at 56-57). Grade hired Plaintiff over multiple other candidates. The facts of this case warrant a strong inference of no discriminatory action.

"[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang,* 225 F.3d at 1127 (quoting *Godwin*, 150 F.3d at 1220-22). "Direct evidence is evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Godwin*, 150 F.3d at 1221 (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Id.* Indirect evidence "tends to show that the employer's proffered motives were not the actual motives because they are inconsistent or otherwise not believable" and must be "specific" and "substantial." *Id.* at 1222.

In this case, there is no direct evidence of discrimination based on Plaintiff's race or national origin. Plaintiff relies upon inferences from the facts that Grade terminated Plaintiff shortly after Plaintiff had a conversation with the same parent who had earlier

raised a concern about Plaintiff's accent and that Grade cut short the Intervention Plan. Defendant's proffered reason for the termination—that Plaintiff continuously failed to satisfy Performance Element Four—is not "inconsistent" with the early termination of the Intervention Plan. There are no facts in the record to show that Grade was aware of Plaintiff's December conversation with the parent. The evidence of Plaintiff's conversation with the parent and Plaintiff's subsequent termination prior to the end of the Intervention Plan is not "substantial" evidence to show that Defendant's proffered reason for the termination is "not believable." *Id.* The evidence in the record is insufficient to demonstrate pretext. Summary judgment on Plaintiff's Title VII claim is granted.

**Rehabilitation Act Claim**

The Rehabilitation Act prohibits employment discrimination on the basis of disability. 29 U.S.C. §§ 791, *et seq*. "The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act" ("ADA"). *Coons v. Sec'y of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) (citations omitted).

Defendant contends that Plaintiff has failed to meet the burden of showing a prima facie case because Plaintiff was not performing his job satisfactorily and because Plaintiff fails to demonstrate that he had a disability. Defendant contends that Plaintiff was terminated for a legitimate, nondiscriminatory reason—poor work performance—and that there is insufficient evidence of pretext. Plaintiff contends that he was disabled due to his difficulty hearing, or in the alternative, that he was perceived as having a hearing disability. Plaintiff contends that he was qualified for the position and that his performance was improving. Plaintiff contends that Grade's attitude toward him changed after learning of Plaintiff's difficulty hearing.

To make out a prima facie case under the Rehabilitation Act, a plaintiff must bring forward facts to show that (1) he is disabled; (2) he is otherwise qualified for employment; and (3) he was terminated because of his disability. *Brown v. Potter*, 457 Fed. Appx. 668,

11

19-cv-1128-WQH-BGS

670 (9th Cir. 2011); *see also Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481 (9th Cir. 1996) (discriminatory termination under ADA).

The Rehabilitation Act adopts the ADA's definitions for "disability." 29 U.S.C. §§ 705(20)(B), 794(d). Under the ADA, a disability is defined as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
> (B) a record of such impairment; or
> (C) being regarded as having such impairment.

42 U.S.C. § 12102(1). Grade acknowledged that he became aware that Plaintiff was "a little hard of hearing" during Plaintiff's tenure. (Grade Affidavits, Ex. 4 to Keehn Decl., ECF No. 31-3 at 96). Plaintiff is not required to present evidence that Grade regarded him as being substantially limited by his condition. *Nunies v. HIE Holdings*, 980 F.3d 428, 434 (9th Cir. 2018). Plaintiff has a sufficient factual basis for the assertion that he was "regarded as" having an impairment. Being regarded as having an impairment meets the definition of "disabled." 42 U.S.C. § 12102(1)(C). The first element of the prima facie case is met.

An otherwise qualified person is one who can perform the essential functions of the job in question "with or without reasonable accommodation." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 989 (9th Cir. 2007). The record shows that Plaintiff's hearing disability did not prevent him from being able to perform the essential functions of his job. The second element of the prima facie case is met.

The stated reason for Plaintiff's termination was his failure to monitor and assess student achievement. There is no connection between Plaintiff's ability to hear and the stated reason for termination, as a hearing disability would have no impact on Plaintiff's ability to, for instance, enter grades. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1140 (9th Cir. 2001) ("The link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability."). The third element of Plaintiff's prima facie case is not satisfied.

Even if the requirements of the prima facie case were satisfied, Defendant has met his burden to demonstrate a legitimate nondiscriminatory reason for the termination. Plaintiff's statement that "when Mr. Grade learned of my hearing disability . . . he decided he needed to get rid of me" (Lorenzo Affidavit, Ex. B to Prato Decl., ECF No. 33-2 at 16), is not a sufficient basis for a finding of pretext. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001) ("A plaintiff's belief that a defendant acted from an unlawful motive, without evidence to support that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive. To be cognizable on summary judgment, evidence must be competent."). Plaintiff has not come forward with any fact showing Plaintiff's termination was because of a disability. Summary judgment on Plaintiff's Rehabilitation Act claim is granted.

## V.   CONCLUSION

IT IS HEREBY ORDERED that the Motion for Summary Judgment filed by Defendant Lloyd J. Austin III (ECF No. 31), is granted. The Clerk of the Court shall enter Judgment in favor of Defendant and against Plaintiff.

Dated:  October 28, 2021

Hon. William Q. Hayes
United States District Court